

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-9-2009

# Conroy v. Leone

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-4929

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Conroy v. Leone" (2009). *2009 Decisions.* Paper 1762.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1762

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 06-4929
_____

THOMAS CONROY,

Appellant

v.

CHARLES C. LEONE;
*STUART RABNER, The Attorney General Of The State Of New Jersey;
JOHN L. MOLINELLI, Bergen County Prosecutor

*(Pursuant to Rule 43(c), F.R.A.P.)
_____

On Appeal from the United States District Court
for the District of New Jersey
No. 05-cv-03792
District Judge: Honorable Peter G. Sheridan

Submitted Pursuant to Third Circuit LAR 34.1(a)
November 19, 2008

Before: BARRY and CHAGARES, Circuit Judges, and COHILL, District Judge[1]

(Filed: March 9, 2009)

---

[1] The Honorable Maurice B. Cohill, Jr., Senior United States District Judge for the
Western District of Pennsylvania, sitting by designation.

OPINION OF THE COURT

CHAGARES, Circuit Judge.

This case comes to us on appeal after Thomas Conroy's writ of habeas corpus was denied by the District Court. Conroy argues that his Sixth Amendment right to a speedy trial was violated in New Jersey state court. For the reasons stated below, we will affirm the ruling of the District Court.

I.

Because we write solely for the benefit of the parties, we will only briefly summarize the essential facts. On June 1, 1998, Nicholas Kyriazis and Mark Vassos broke into Helen Imperatore's home in Fort Lee, New Jersey. Her friend and house assistant, Margaret Madden, was also there. Kyriazis and Vassos threatened to kill the two women if they did not tell them where money was located. They then tied the women up, and stole money and jewelry. The homeowner later offered a $10,000 reward for tips regarding the crime. The next day, acting on such a tip, police went to a jewelry store in Bloomfield, New Jersey, where the owner told them that Kyriazis had come in earlier with jewelry and told the owner that he and "Mark" had "done a 'job' in Fort Lee" the night before. The owner consented to a search of the store, and the police recovered some of the stolen jewelry.

Later that day, also in Bloomfield, the police saw a car that met the description of the car that Kyriazis was driving. The police stopped the car and arrested the three people

2

inside, including Conroy. When the police searched the car, they recovered cash as well as the drug Xanax. Conroy gave the police consent to search his home, and they subsequently found jewelry matching the description of jewelry that had been stolen the night before, as well as clothing which had burrs on it which matched burrs outside of the victim's home.

Conroy was later indicted for multiple crimes, including second degree conspiracy to commit armed robbery and second degree conspiracy to commit theft under N.J. Stat. Ann. § 2C:5-2; second degree theft by receiving stolen property, N.J. Stat. Ann. § 2C:20-7; and third degree unlawful possession of Xanax, N.J. Stat. Ann. § 2C:35-10a(1). Conroy, along with his co-defendants Vassos and Kyriazis, filed various motions to suppress evidence, and hearings on these motions were held by the state trial court between August 1, 2000 and October 11, 2000. The motions were denied on October 11, 2000. Vassos was tried between July 11, 2001 and July 26, 2001. On or around September 19, 2001, Conroy's counsel filed a motion to dismiss the indictment for lack of prosecution, and this motion was later denied. Kyriazis was tried between January 7, 2002 and February 4, 2002. Conroy was tried between April 29, 2002 and May 28, 2002.

A jury found Conroy guilty of conspiring to commit armed robbery and theft, trafficking in and receiving stolen property, and unlawful possession of Xanax. He was sentenced to 23 years in prison with seven and a half years of parole ineligibility. His conviction was affirmed by the New Jersey Superior Court (the Appellate Division) and

3

his petition for certification to the New Jersey Supreme Court was denied on May 25, 2005.

Conroy then filed a petition for a writ of habeas corpus in the United States District Court for the District of New Jersey, which was denied. This Court later granted Conroy's application for certificate of appealability on the issue of whether his right to a speedy trial had been violated.

## II.

The District Court had jurisdiction pursuant to 28 U.S.C. § 2254. We have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253. We exercise de novo review over the decision of the District Court. Douglas v. Cathel, 456 F.3d 403, 417 (3d Cir. 2006). We will deny Conroy habeas relief unless we find that adjudication of "any claim that was adjudicated on the merits in State Court proceedings" (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court. . . ." or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (2).

The issue before this Court is whether the state court merits adjudication involved an unreasonable application of clearly established federal law.[2] Unreasonable in this

_____

[2]The parties do not dispute that there was a state court adjudication on the merits nor do they dispute that the adjudication was based on a reasonable determination of the facts. In addition, we note that Conroy has not alleged that the decision of the Appellate

4

context means "objectively unreasonable," and ". . . a federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams v. Taylor, 529 U.S. 362, 409, 411 (2000).

III.

The clearly established federal law relevant to this appeal is the portion of the Sixth Amendment that states "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial," and the Supreme Court's decision in Barker v. Wingo, 407 U.S. 514 (1972), interpreting this provision. The Supreme Court has set forth a balancing test to determine whether an accused's Sixth Amendment speedy trial rights have been violated. Courts must weigh the "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." Id. at 530.[3]

The length of the delay figures into the speedy trial analysis twice. First, it is used to determine whether Barker is triggered at all. Hakeem v. Beyer, 990 F.2d 750, 759-60

---

Division was "contrary to . . . clearly established law as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1).

[3] The Court in Barker stated, however, that "none of the four factors" are "either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with other such circumstances as may be relevant." 407 U.S. at 533.

(3d Cir. 1993). If the delay is long enough to trigger Barker, it is then analyzed as "one factor among several," and courts should measure the "extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." Doggett v. United States, 505 U.S. 647, 652 (1992). Although it did not explicitly so state, the Appellate Division presumably found the delay long enough to trigger Barker, as it then conducted its analysis under Barker. This finding was objectively reasonable. Hakeem, 990 F.2d at 755 (finding that a delay of fourteen and one half months "triggers a Barker inquiry.").

Analyzing the case under the Barker factors, the Appellate Division presumably found the first Barker factor weighed in favor of Conroy, as it stated that it "agree[d] with the defendant that the delay was lengthy." Appendix (App.) at Da35. This is an objectively reasonable interpretation, as Conroy was held four years between his arrest and trial.

With regard to the second Barker factor, the Appellate Division found that the case was "delayed for valid reasons." App. at Da35. The Appellate Division found that the case was "complex . . . involving multiple defendants, numerous charges and a variety of witnesses." Id. It stressed that Conroy and the other defendants filed "substantial motions to suppress evidence," and that "[a] delay caused by a defendant will not weigh in favor of a finding of a speedy trial violation." Id. at Da36. Another reason for the delay was that because there were three defendants who were all tried separately but

6

required testimony from the same witnesses, "all three trials could not proceed simultaneously and some prioritization was required." Id.

On appeal, Conroy argues that the delay was a "deliberate attempt by the state to hamper the defense." Appellant Br. at 10. While he acknowledges that the state's asserted reason for the delay -- trial strategy -- is "a reasonable reason for the delay," he nevertheless contends that "[m]erely stating that it is a trial tactic is not [a] sufficient[,] valid reason to hold the defendant for nearly four years . . . ." Id. at 11. Despite his assertions, we find that the Appellate Division's determination that this factor weighed in favor of the state was objectively reasonable.

The Appellate Division relied on more than just a blanket assertion that the factor weighed in favor of the state because it was "trial strategy" in making this finding. Indeed, it described the various reasons the trial was delayed, including the actions of both the state and Conroy, and found that the delay was justifiable. See Doggett, 505 U.S. at 651 (characterizing the second Barker factor as "whether the government or the criminal defendant is more to blame for that delay. . . ."); id. at 656 ("[P]retrial delay is often both inevitable and wholly justifiable. The government may need time to collect witnesses against the accused, oppose his pretrial motions . . .We attach great weight to such considerations when balancing them against the costs of going forward with a trial whose probative accuracy the passage of time has begun by degrees to throw into question."); Barker, 407 U.S. at 531 ("A deliberate attempt to delay the trial in order to

7

hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered. . . ."); Hakeem, 990 F.2d at 770 (finding that once Barker is triggered, the state must justify the delay). Thus, a finding that this factor weighed in favor of the state was objectively reasonable.

With regard to the third Barker factor, the Appellate Division found that Conroy "delayed in asserting his right to a speedy trial," not asserting it in a formal motion until September, 2001, which it found weighed against his claim. App. at Da36.[4] Barker stated that "[t]he defendant's assertion of his speedy trial right. . . is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." 407 U.S. at 531-32. We therefore find that it was not objectively unreasonable for the Appellate Division to find that such a delay weighed against Conroy.

Finally, the Appellate Division noted that with regard to Barker's prejudice factor, Conroy made no "claim that the delay impaired defendant's ability to defend himself

_____

[4] The Appellate Division found this to be the case despite the fact that Conroy's counsel had informally asked about it earlier. App. at Da36. As Conroy himself also implies that he did not actually ask for it until he made a formal motion, we will not consider whether the informal request made previously weighs in favor of Conroy. See Conroy Br. at 10-11.

8

against the charges." App. at Da36. Therefore, the Appellate Division presumably found that this factor weighed in favor of the state, which is objectively reasonable.[5]

Though we agree that the length of the delay weighs in Conroy's favor, his delay in asserting his speedy trial claim coupled with the legitimate reasons given for the delay plus the absence of any real showing of prejudice by Conroy lead us to find that the Barker factors here weigh in favor of the state. We hold that the Appellate Division did not engage in an exercise that ". . . involved an unreasonable application of clearly established federal law as determined by the Supreme Court" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).

IV.

We will therefore affirm the District Court's denial of Conroy's petition for writ of habeas corpus.

_____

[5] Conroy included one conclusory sentence in his brief that apparently suggests, for the first time, that his witnesses suffered prejudice. We find this undeveloped argument has been waived. See Bagot v. Ashcroft, 398 F.3d 252, 256 (3d Cir. 2005).